1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   WAYNE ANTHONY ROSE,                         No.  2:24-CV-0143-DMC

12                Plaintiff,

13        v.                                      <u>MEMORANDUM OPINION AND ORDER</u>

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                  Defendant.
16

17

18               Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20   Pursuant to the written consent of all parties, ECF Nos. 4 and 9, this case is before the

21   undersigned as the presiding judge for all purposes, including entry of final judgment.  <u>See</u> 28

22   U.S.C. § 636(c); <u>see also</u> ECF No. 18 (minute order reassigning action).  Pending before the

23   Court are the parties' briefs on the merits, ECF Nos. 13, 15, and 17.[1]

24   / / /

25   / / /

26   / / /

27   _____

28        [1]        Plaintiff has filed a motion for a two-day extension of time to submit his reply brief.  <u>See</u> ECF No.
     16.  Good cause appearing therefor, Plaintiff's motion will be granted, and the reply brief will be deemed timely.

                                              1

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

Step 1      Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

/ / /

/ / /

| | | |
|---|---|---|
| Step 2 | | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989).  The claimant has the initial burden of proving the existence of a disability.  See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work.  See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).  If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy.  See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock

3

1  v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

2

3                          **II.  THE COMMISSIONER'S FINDINGS**

4            Plaintiff applied for social security benefits on February 21, 2022.  See CAR at

5  25.[2]  In the application, Plaintiff claims disability began on October 19, 2021.  See id.  Plaintiff's

6  claim was initially denied.  Following denial of reconsideration, Plaintiff requested an

7  administrative hearing, which was held on February 23, 2023, before Administrative Law Judge

8  (ALJ) B. Hobbs.  In a March 15, 2023, decision, the ALJ concluded Plaintiff is not disabled based

9  on the following relevant findings:

10          1.      The claimant has the following severe impairment(s): degenerative
                    disc disease; and a grade 3 separation of the left shoulder.
11

12          2.      The claimant does not have an impairment or combination of
                    impairments that meets or medically equals an impairment listed in
13                  the regulations.

14          3.      The claimant has the following residual functional capacity: can
                    perform a range of light work; he can never climb ladders, ropes,
15                  or scaffolds; he can occasionally stoop, kneel, crouch, or crawl; he
                    can occasionally reach overhead with the left upper extremity.
16
            4.      Considering the claimant's age, education, work experience,
17                  residual functional capacity, and vocational expert testimony, there
                    are jobs that exist in significant numbers in the national economy
18                  that the claimant can perform.

19          See id. at 27-31.

20  After the Appeals Council declined review on November 29, 2023, this appeal followed.

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  _____

28  [2]      Citations are to the Certified Administrative Record (CAR) lodged on March 11,
    2024, ECF No. 10.

                                        4

1

### III.  DISCUSSION

2         Plaintiff argues that the ALJ failed to properly develop the record.  See ECF No.

3   13, pgs. 8-11.  Specifically, Plaintiff asserts that, in the absence of updated medical opinions, the

4   ALJ improperly rendered a lay interpretation of the medical evidence.  See id.  Plaintiff contends

5   that the failure to develop the record by obtaining a recent medical opinion undermines the ALJ's

6   residual functional capacity assessment.  See id.  The Commissioner argues: (1) the ALJ did not

7   have a duty to develop the record; and (2) the issue was waived by Plaintiff's attorney during the

8   administrative hearing.  See ECF No. 15, pgs. 9-16.

9         At Step 4, the ALJ evaluated medical opinion evidence and the objective medical

10  evidence to determine Plaintiff's residual functional capacity.  See CAR at 28-30.  In making this

11  determination, the ALJ considered the opinions of Drs. Dipsia and Trias, state agency medical

12  consultants.  See CAR 29-30.  The ALJ stated as follows:

13

14       The claimant sought medical treatment in late 2021 after falling from a 9-foot roof. Radiological reports indicated the claimant had old compression fractures at T12 and L1, but that there was no specific evidence that these

15  injuries were acute (Ex. C2F, 13). Treatment notes from early 2022 document the claimant's complaints of "significant" mid back pain that increased with movement (Ex. C2F, 9). He reportedly demonstrated

16  tenderness to palpitation of the mid back, consistent with the degenerative changes observed in medical imaging (Ex. C2F, 14). Such evidence

17  reasonably justifies certain physical limitations, but subsequent medical findings are not indicative of a debilitating pain condition.

18

19       Medical records from early 2022 indicate the claimant was involved in multiple vehicle accidents after riding his motorcycle and suffering

20  injuries to his left shoulder and hip (Ex. C4F, 9). The claimant's injuries are obviously unfortunate, but his capacity to ride a motorcycle certainly undermines his earlier assertion of debilitating back pain. While he

21  exhibited abrasions, bruising, and pain in the immediate aftermath of these events, he nevertheless presented as alert and fully oriented with normal

22  affect (Id.). Medical imaging revealed multilevel degenerative changes, but he nevertheless declined any pain medication – explaining that he

23  could cope with his symptoms with "a couple Advil" and marijuana (Exhibits C4F, 9 and C6F, 11). Days later, his upper extremity movement

24  and bruising both improved (Ex. C4F, 12). While his range of motion did not yet return to pre-injury levels, it appears that his healing process

25  proceeded without complication.

26       By mid-2022, the claimant's reported pain symptoms were "minimal" and improving (Ex. C5F, 8). His left shoulder range of motion was still

27  limited, but he exhibited normal motor strength in the joint (Id.). X-rays revealed a grade 3 AC separation without any fractures or dislocations

28  (Ex. C5F, 9). Overall, the claimant presented as alert, fully oriented, and

1    no acute distress (Ex. C5F, 8-9). Again, while there is some justification
2    for physical limitations, the claimant's clinical presentation does not
     reasonably suggest that his injures were disabling.

3    The State agency medical consultants, Dr. Dipsia and Dr. Trias, reviewed
     all available evidence in 2022 and arrived at disparate conclusions of the
4    claimant's residual functional capacity. The initial assessment in April
     2022 concluded the claimant could still reasonably sustain medium work
5    involving "about 6 hours" of standing/walking (See Ex. C1A, 9). Upon
     reconsideration in July 2022, however, Dr. Trias recommended the
6    claimant be limited to light work to account for the claimant's low back
     pain, which was reasonably corroborated by radiological evidence (See
7    Ex. C3A, 9). In resolving the incongruity between the opinions of Dr.
     Dipsia and Dr. Trias, the undersigned finds Dr. Trias' latest assessment
8    more persuasive. While the claimant's shoulder injuries are healing
     normally following his motorcycle accident, he continues to exhibit
9    diminished range of motion upon examination. A restriction to light work
     reasonably accounts for his residual discomfort.
10
     More recent evidence obtained at the hearing level includes commentary
11   from the claimant's treatment provider that his old compression fractures
     are potentially subacute (Ex. C6F, 9). While lifting heavy objects
12   produced "sharp" pain in his mid-back, the claimant was nevertheless a
     younger individual in "general good health" (Id.). By April 2022, he
13   reportedly walked with a normal gait and demonstrated normal stability
     (Ex. C6F, 7-8). A restriction to occasional overhead reaching on the left
14   side, as proposed by Dr. Trias, should reasonably account for his healing
     shoulder injury.
15
16   CAR 29-30.

17        Plaintiff argues that Dr. Trias' medical opinions were "stale" in light of more

18   recent medical information that had not been considered by Dr. Trias.  See ECF No. 13, pgs. 9-

19   10.  Specifically, Plaintiff references a treating physician note from June 1, 2022, found in the

20   record at CAR 386-88 (Exhibit C6F).

21        At the outset, the Court agrees with the Commissioner that the issue of the ALJ's

22   duty to develop the record has been waived.  Generally, a reviewing court is only required to

23   address issues that have been raised in earlier administrative proceedings.  See Avol v. Sec'y of

24   Health & Hum. Servs., 883 F.2d 659, 661 (9th Cir. 1989).  When social security claimants are

25   represented by counsel, "they must raise all issues and evidence at their administrative hearings in

26   order to preserve them on appeal."  Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999).

27   Failure to comply with this well-established rule is only excused "when necessary to avoid a

28   manifest injustice."  Id.  When an issue is not raised in earlier administrative proceedings, the

                                               6

1   issue may nonetheless be considered if it is a question of pure law.  See Silveira v. Apfel, 204

2   F.3d 1257, 1260 n.8 (9th Cir. 2000).  A question of pure law is a question that could be decided

3   "quickly and cleanly without having to study the record."  See Ahrenholz v. Bd. of Trustees of

4   Univ. of Illinois, 219 F.3d 674, 677 (7th Cir. 2000).

5           Courts in this district that have considered the issue have consistently concluded

6   that the ALJ's duty-to-develop issue is waived on appeal if not raised at the administrative

7   proceedings below.  See e.g. Parker v. Comm'r of Soc. Sec., 2023 WL 8435386, at *8 (E.D. Cal.

8   2023); Gonzalez v. Kijakazi, 2023 WL 6164086, at *5 (E.D. Cal. 2023); Karl v. Kijakazi, 2023

9   WL 3794334 (E.D. Cal. 2023), at *4.  In this case, Plaintiff's counsel stated at the administrative

10  hearing that the record was complete and never argued that Dr. Trias' opinions were "stale"

11  because the doctor did not consider the June 1, 2022, note from Plaintiff's treating physician.  See

12  CAR 65 (transcript of administrative hearing).  Because Plaintiff's counsel confirmed the record

13  was complete at the administrative hearing, never objected to consideration of Dr. Trias' opinion,

14  and never requested that the record be further developed by obtaining an updated medical

15  opinion, the issue of the ALJ's duty to develop the record has not been preserved for appeal.

16          In any event, the Court finds that Plaintiff's argument lacks merit.  The ALJ has an

17  independent duty to fully and fairly develop the record and assure the claimant's interests are

18  considered.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  This requires the

19  ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant

20  facts."  Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978).  Ambiguous evidence or the ALJ's

21  own finding that the record is inadequate triggers this duty.  See Tonapetyan, 242 F.3d at 1150.

22  "The mere existence of medical records post-dating a state agency physician's review does not in

23  and of itself trigger a duty to further develop the record." Stivers v. Saul, 2021 WL 1193794

24  (E.D. Cal. Mar. 2021) (citing Charney v. Colvin, 2014 WL 1152961 (C.D. Cal. Mar. 21, 2014),

25  aff'd, 647 F. App'x 762 (9th Cir. 2016)) ("[a]n updated opinion is not required simply because

26  additional medical evidence is received after State agency consultants review a claimant's case").

27  / / /

28  / / /

7

According to Plaintiff:

> . . . The ALJ erred in crediting the April 2022 findings of Dr. Trias as his findings were stale in light of mor recent medical evidence of record. T 30. Most notably, on June 1, 2022, Plaintiff presented at Shasta Orthopedics with a chief complaint of left shoulder pain following a motorcycle accident. T 386. Physical examination revealed positive step off of that AC joint with superior cephalad. T 386. Shoulder range of motion is severely limited and painful. T 386. Neer's impingement was mildly positive, Hawkin's impingement was mildly positive, and the cross-body A/C compression test is positive for pain. T 386. Imaging of left shoulder revealed grade III AC separation without any fractures or dislocations noted. T 387. Plaintiff was assessed with left shoulder pain, and AC separation, type III. T 387. Plaintiff presented in a sling and Brian Layton, PA-C discussed an AC brace with Plaintiff. T 387. In short, it is not the mere passage of time since Dr. Trias' opinion that rendered it stale, but these significant developments in Plaintiff's physical condition that occurred after Dr. Trias rendered his non-examining, non-treating opinion.

ECF No. 13, pgs. 9-10.

The report of Plaintiff's June 1, 2022, visit with Shasta Orthopedics is contained in the record as Exhibit C6F.  See CAR 384-95.  The chief complaint and history of Plaintiff's present illness is recorded as follows:

> He presented with left shoulder pain. The patient presented for a new patient consultation from Brian Layton PA-C. Date of injury 3/31/2022. The mechanism of injury was bike wreck. The reported pain severity is minimal. Symptoms are described as aching. The symptoms are gradually improving. Wayne is a pleasant 45-year-old gentlemen presenting with left shoulder injury. This occurred on 3/31/2022 when he was laying his motorcycle bike down onto the gravel on the left side. He has some pretty significant pain. It still limits some of his activities of daily living and function. He has not had any previous injury. He has otherwise been healthy. History of present illness and past medical history was reviewed and confirmed with no change from history form and on 6/1/2022.

CAR at 386.

The medical note also contains a review of Plaintiff's systems, which states that Plaintiff denied any abnormalities in his constitutional, cardiovascular, musculoskeletal, and endocrine systems, besides the joint pain in his shoulder.  See id.

Upon physical examination, the doctor noted that Plaintiff appeared to be "in no acute distress."  Id.  As Plaintiff notes in his brief, examination of Plaintiff's left shoulder revealed no joint effusion, though range of motion was described as "severely limited and painful."  Id.  Also as noted by Plaintiff, the doctor reported "mildly positive" Neer's impingement sign and

1  Hawkin's impingement sign.  Id.  Cross-body A/C/ compression test was positive for pain.  See id.

2  at 387.  Left elbow range of motion was normal.  Plaintiff was provided a sling and the doctor

3  discussed further treatment options including an AC brace and anti-inflammatory injections if

4  problems persisted.  See id.

5             Plaintiff's argument relies on the fact that the June 1, 2022, medical note was not

6  considered by a medical expert.  While it appears that neither Dr. Dipsia nor Dr. Trias considered

7  this evidence, as explained above the mere existence of evidence not considered by a state agency

8  consultative physician does not in and of itself trigger the ALJ's duty to develop the record.  For

9  the duty to be triggered, new evidence must create an ambiguity which necessitates further

10  development of the record for a proper evaluation.  Here, the Court finds that the June 1, 2022,

11  report creates no such ambiguity.  To the contrary, it is entirely consistent with the findings by

12  Dr. Trias as well as the ALJ's assessment of the entire record as a whole.  Specifically, the ALJ

13  found that Dr. Trias' limitation on overhead reaching on the left accommodates the continued left

14  shoulder pain and decreased range of motion noted in the June 1, 2022, report.

15

16  ### IV.  CONCLUSION

17             Based on the foregoing, the Court concludes that the Commissioner's final

18  decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

19  ORDERED as follows:

20             1.       Plaintiff's motion for an extension of time, ECF No. 16, is granted and

21  Plaintiff's reply brief is deemed timely.

22             2.       Plaintiff's motion for summary judgment, ECF No. 13, is denied

23             3.       Defendant's cross-motion for summary judgment, ECF No. 15, is granted

24             4.       The Commissioner's final decision is affirmed; and

25             5.       The Clerk of the Court is directed to enter judgment and close this file.

26  Dated:  November 1, 2024

27  _____
    DENNIS M. COTA

28  UNITED STATES MAGISTRATE JUDGE